The first case for today, which is United States v. Anastasio Monsivais. We'll hear first from Mr. Howes. May it please the court, Evan Howes for Anastasio Monsivais. Your Honor, as federal rule of evidence 404B prohibits the government from introducing extrinsic act evidence for the purpose of showing that a defendant is the kind of person who commits a charged offense and that his instant conduct conformed with that propensity. Unfortunately, that is precisely how the government used the Jane Doe evidence in this case. The trial prosecutor characterized that evidence as a prior instance of attempted enticement, the very offense with which Mr. Monsivais was charged, and the prosecutor urged the jury to rely. Now, are you talking about closing argument? Yes, Your Honor, we are. And there was no objection? No, Your Honor, not on the basis of prosecutorial misconduct. We objected strenuously throughout the several pretrial conferences in the record to this evidence as both irrelevant and unduly prejudicial. But you didn't object when he said that during closing argument? No, Your Honor, and I don't think that for the purposes of our analysis here, of the court's analysis here, that it was necessary to make an objection. In fact, many courts have recognized that doing so in those type of circumstances could serve only to— Well, it might go to if it was error, it was harmless. I'm just asking you to help me better understand what went on in this trial, two-day trial. Yes, Your Honor, it was a two-day trial. And what we're saying with the evidence is we're not here to claim that there was prosecutorial misconduct necessarily in the closing argument. What we're saying is that there's a basic principle that this court – that runs throughout this court's cases. United States v. Fortenberry explicitly in a published opinion states that the prosecutor's use of extrinsic act evidence to directly argue propensity is relevant to the prejudice prong of the 404B analysis, and it's relevant in the harmlessness analysis. So the court could, of course, take into account that there was no objection there, but I don't think that that factor weighs heavily in favor of the government here. At best, it's a push because there is a strategic value to not wanting to emphasize evidence that we strenuously believed was unduly prejudicial. We argued to the district court on multiple occasions that this evidence would mislead the jury, that it was going to confuse them, and that it was simply offered to show that Mr. Monsivais was a bad guy, and that is the problem here. That is exactly what ruled. It was offered to show this is his typical M.O., method of operation, and the main defense Monsivais has is I didn't believe she was a minor. Your Honor, just to clarify, I don't take the government's argument in its brief to actually assert the modus operandi. Well, the plan. Right, Your Honor. So we're all on the same terms. The modus operandi this court's cases make clear, and the commentators— Well, strike my use of modus operandi. It's plan. No problem, Judge Barksdale. So as to plan, I think we've sufficiently addressed and debunked that theory in our briefing. Now, this court's opinion in Cresdorn is very clear, and subsequent opinions are very clear that the plan rationale is only implicated in a case where the extrinsic activity is part of the conduct that is used to show the plan to commit the actual charged offense. So in this case, that would mean that the discussion with Jane Doe was part of the overarching goal, a larger goal, of enticing Agent Williams' fictional personality, Aaron. And so that's the difference. That's why plan—in fact, I'd like to— You wear the blue shirt, and you do this and that, the kind of series of events that's a method to do something. There's not anything specific like that. That's right, Judge Elrod. We would certainly contest modus operandi on the substance in terms that this wasn't enough or similar enough to demonstrate the handiwork of the accused or the signature quality of an offense. But even regardless of that, identity simply wasn't at issue here. Is it absence of mistake, though? No, Your Honor. And to be clear, I know that there's a tendency to go into all of the different purposes that could possibly be, and that's fine. And I'm here, and I'm prepared to do that. Which one did the district court specifically rely upon in this analysis? The district court did not— That's the one we have to pick. The district court did not specifically embrace an analysis. In fact, to give the district court credit, the district court urged the trial prosecutor not to inject any 404B in this case. I noticed that when I was going back through the record, and I didn't put—I didn't stress that in my briefing, so I'd like to point the court to the record at page 271 and page 281 and 82 where the district court explains to the prosecutor, look, this is a straightforward case. We don't need 404B. It's going to muck it up. Why don't we just try this straight up? Well, the government had three types of 404B evidence it wanted to use, and he did not allow two of the items but did allow this third one. That's right, Judge Barksdale. He did. He asked the government whether or not—what piece of evidence. He finally gave up. The government very much wanted to get this evidence in, and he finally said— Judge Kazin doesn't give up, counsel. You're right, and I didn't mean to imply anything about Judge Kazin in this case. I think Judge Kazin was correct in his initial instinct that this evidence really isn't necessary in this case, and the government persisted, and so here we are. So what is the basis? What is the legitimate basis? I guess I should ask the government. I think we can—I think from the record it's pretty clear to infer that what the government was using this evidence for or thought the evidence was relevant for was intent, the intent element of Section 2422B, which in an attempt case like this requires the defendant to specifically intend to sexually entice a person he actually believes is a minor. It's not enough, as the court's jury instructions, pattern instruction, make clear that he just suspect that he's talking to a minor. He would be entitled to a verdict of not guilty if that's all the evidence could reasonably show. He has to actually believe, and that was a hotly disputed issue in this case, and that was, in fact, the only disputed issue. It's very clear from the trial prosecutor's statements to the district court, and particularly in the closing argument, that the evidence – he was using the evidence to demonstrate this same-script theory of the case, that Mr. Monsivais is an individual who entices children by laying a trap with the same script. He did it before, and that's why you should find him guilty here. And that is the exact core purpose that Rules 404B and 403 exist to prevent is asking the jury to infer guilt from propensity. And that's what separates Mr. Monsivais' case from other 404B cases, and that's why we think that this is one of those rare instances. And it is rare where the wrongful admission of Rule 404B evidence does warrant a new trial. Just to turn to – this court applies a three-step analysis whenever it's looking at 404B evidence. The questions have been to multiple of those different prongs, so I'll try to take it back and go through. At the first step, the court looks to whether the extrinsic activity was sufficiently proved in the sense that the relevant aspect of the extrinsic activity. Here, as we discussed, the government offered the extrinsic activity to demonstrate Mr. Monsivais' intent, specific intent to entice and actual belief in a minor. When this is the stated purpose at issue, this court's cases couldn't be more clear what the rule is, and it was first established in the en banc decision in Beecham in 1978. When intent is at issue, the court looks at whether or not the jury could find that the defendant acted with the same intent in the extrinsic offense as is required to prove the substantive charge defense. In this case, that would be the specific intent. And as the government candidly acknowledged in its brief, the evidence before the jury in this case simply was not sufficient to find that Mr. Monsivais engaged in the Jane Doe conversation with the same intent as it needed to prove a Section 2422B prosecution. Is that because it's not—what's the reason for that? Is it because it's not explicitly sexual or— That's the primary reason, Judge Elrod, is that it's not specifically sexual, so there's no basis for that inference that the defendant has intended or has a sexual desire for minors. And that's the common theme that we pointed out in our briefing was present in all the reported cases that we were able to find that involved Section 2422B prosecutions and the admission of a prior communication between the defendant and a minor or even between the defendant and another adult, such as emails, where the content is sexually explicit in reference to minors. Well, as I recall from the briefs, this first instance with, as you referred to, Jane Doe, they were having—I don't know why, but the conversation would be broken up, and then a long period later the conversation would resume, et cetera, et cetera. So maybe he didn't get into the sexual aspect of it simply because of communication failures or whatever. I don't know, but I question that if he doesn't dot every I and cross every T, that you still can't see that as part of—used to show intent. Judge Bartlett? He certainly used the same come on about, oh, you don't look 13. I mean, it was almost verbatim, the two conversations. Except for the sexual character. Well, I understand that. But he was also having apparently problems with, I don't know why, maybe bad cell area or something. I don't know. That might be true, Judge Barksdale, but that is precisely the reason why this evidence was so prejudicial is because it does implicate that speculation in the mind, and it's not necessarily unreasonable to speculate. Speculation in whose mind, the juror's mind? In the juror's mind, yes, Your Honor. Speculation as to what? As to where that conversation was going. There's a lot of inferences that have to be made there, and then it also has the risk of you're essentially inferring the existence of the prior offense, the extrinsic offense, from the proof of the actual offense. And if you're doing that, if you need to—if the jury has to believe the actual offense occurred in order to believe that the extrinsic offense occurred, then the extrinsic offense isn't being used to make it more likely that the actual offense occurred anymore. It's just simply being used to show repetitive conduct. You were starting to talk to us about cases, and you had mentioned Beecham doesn't support the prosecution. Is that your best case, or is there some other case that you would say we should really study because it's like this one? If we're at the first step when we're talking about the analysis that should happen when whether or not the offense was proved because of the similarity as to the intent, this court's 2014 decision in Gutierrez-Mendez is cited in our briefs, and its 1981 decision in Guerrero. Okay. You're almost out of time, so go ahead and get to your other steps and what other cases. No problem, Judge Elrod. Moving on to 403, balancing. Even if we assume that James Doe evidence cleared the first hurdle in this case, it should readily have been excluded because its prejudicial potential overwhelmed the probative value in this case. We cited multiple factors in our briefs that decreased probity, increased prejudice, but I'd like to fact—especially now with the time, I'd like to really drill down on two of those. First is the prosecutor's use of the evidence in this case was to directly argue propensity. It is repeated, and it is pervasive, and it is the last thing that the prosecutor left with the jury. In fact, the jury said because this is what he does, you should find him guilty, and he was referring to the extrinsic offense, not to the actual offense charged. And the second is the biggest problem that Beacham recognized with this type of evidence when it's uncharged is the potential for the jury to want to convict the defendant even if he's not guilty because they're upset about the charged offense or the extrinsic offense, and that was a huge possibility here because of the character of the evidence. They basically replaced the agent with an actual victim. Because they knew that the agent was the agent in the real case, right? And then they also knew it was a real girl in the other situation. Yes, Your Honor, and I would like to beg the court's indulgence on when I get back up for rebuttal to talk about harmlessness. We didn't get to it, but I think that's a very important question. Thank you. Judge Dennis, why don't you take some of your rebuttal to talk about harmlessness so the government can respond? Yes, Judge Barksdale, no problem. We normally don't let you bring up things on rebuttal you didn't cover on your opening argument. You're right, Judge Barksdale. How much time do you want? Two minutes is fine. There's a lot of moving parts in this case, and I really wanted to make sure I answered the court's questions as to particularly the relevance prong. When we turn into the final port, the harmlessness, this court's 2013 opinion in Hamilton makes clear that reversal based on 404B error is appropriate when there is a reasonable possibility that the improperly admitted evidence contributed to the defendant's conviction. We think for three main reasons that test is satisfied here. First, the evidence of the guilt was not overwhelming, certainly not enough to render the idea that the jury would embrace the invitation for propensity to be unreasonable. At best, the evidence was mixed with respect to the crucial disputed element, the belief that Aaron, the agent, was actually a minor. Mr. Monsivais presented a plausible defense about the belief the photos of the agent were a female agent in her 20s. Mr. Monsivais repeatedly responded to the pictures by commenting that this woman looked well above 18. Those are two factors that the Seventh Circuit noted in its 2010 decision, and I'm going to butcher this, and it's cited in the briefs where the court recognized that in very remarkably similar circumstances that agents, when an agent uses pictures like that, it does create a reasonable, at least defense, that the defendant maybe did believe that this person was older despite the representations that they were a minor. Second, there were no jury instructions in this case, no limiting instructions that would alleviate the prejudice. And finally— You didn't request one. No, Your Honor, and we're not required to under rule— I'm just pointing out you did not request one. Yes, Your Honor, and the prosecution didn't either. The prosecution promised to alleviate prejudice in its pretrial filings by asking for an instruction. And the court, in essence, gave one. I don't think it did, Your Honor, for the reasons we explained in our brief. And finally, the prosecutor's use. This is just like Fortenberry and just like the 95 Brown decision. The prosecutor actually argued propensity, and that substantially increased the likelihood that the jury— Thank you, Your Honor. Ms. Bahri? May it please the court, Loretta Bahri for the United States. Judge Kazin did not abuse his discretion in admitting the Jane Doe evidence under 404B. Because the Jane Doe evidence showed a pattern of grooming, a script, and allure that Montsevize used with people that he believed to be under 18, it's almost the exact, as Judge Barksdale noted, verbatim script when you compare the dialogue with Aaron 13 and with Jane Doe. He starts off with, Hi, how are you? Then he tells them, I drive a big truck for a living. Then he feigns shock and surprise when he finds out they're 12 and 13. Then he follows up with the lure, and the lure is the script of his 12-year-old stepdaughter. Boy, have I got a story for you. Let me tell you about my 12-year-old stepdaughter. The two instances also occurred very close in time, which is also relevant under 404B. The Aaron 13 chats occurred on March 31st and April 1st of 2016. The Jane Doe chats occurred on March 29th, and we know they were also in 2016. If the court looks at the chat log in Exhibit 8 with Jane Doe, he tells her, Boy, you look like you're 18, 19, or 20. She tells him, LOL, check my profile. Government Exhibit 8A, which is also referred to as 16 on the physical document itself, is the Facebook profile. On the Facebook profile, it says that it was updated on March 25th, and in the bottom left-hand corner, it says Facebook 2016. We know that they're close in time. Did the government say it wasn't sufficient to show intent because it doesn't have the sexual element under Beecham? We did not say that, Your Honor. We said that it was relevant to show under Beecham that it was a pattern of grooming, that it was a script, that it was a lure he used with children, and it was almost so identical. Do you think it is enough under Beecham? I think it's definitely enough under Beecham under the first prong for the pattern and under the second prong, Your Honor, under the balancing. Judge Kazin performed the Beecham balancing to the letter because he excluded even more damaging evidence under 404B, and what was that? There was evidence on Monsivay's phone of an interaction with an adult named Hottie Jennifer, where he specifically requested pictures of really young ones. In addition, in his post-arrest statement, he stated that he had gone to Mexico and had solicited sex with an underage prostitute who was 14 years old. Do you agree that it was improper to say, if you all have lingering doubt in all y'all's mind about this defendant's predisposition to want to have sex with children, I don't think you need to go any further. Yes, the word predisposition is exactly propensity. The honest mistake may not be the second part that the person said, but the first part was not appropriate. The predisposition is the same thing as propensity. Let me point out, Your Honor, first of all, that it was not the United States that brought up the 404B in closing. The prosecutor never mentioned it in his opening closing. That's not what I'm asking. I'm asking, do you agree that that sentence was not appropriate? In the context of the prosecutor responding to the raising of the 404B evidence, the prosecutor was entitled to bring up why it was relevant, and it was relevant to show— Under any circumstances, it's not relevant to show predisposition, and that's the word the prosecutor— It doesn't mean it's reversible error. Perhaps it was the wrong choice of words. Okay, let's be real with each other here. He probably shouldn't have used the word predisposition, but certainly he meant to say—perhaps he meant to say predisposed to use the script or predisposed to use this lure. Predisposition to want to have sex with children is what the prosecutor said specifically. Well, the script and the lure is his intent to— But predisposition to want to have sex is exactly what you're not allowed to do. Do you agree? To actually say that, yes. Okay. But getting back to the balancing of the harmlessness, as I said, Judge Kazin did just a perfect job under Beecham, under Record 690. He specifically said, I'm trying to balance and give the guy the benefit of the doubt. So he excluded all the other 404B evidence, and he kept in the one that most closely met the definition of 404B. If there was any error in admitting the evidence, it was harmless because it did not substantially influence the jury's verdict. Judge Kazin did give a cautionary instruction in the jury instructions, even though no limiting instruction was requested. And the jury was fully aware that there was no sexual overtures in the Jane Doe evidence. There is overwhelming evidence to support this jury's verdict. Monsivais initiated the very graphic sexual conversations and meeting logistics with Aaron 13, as detailed in our brief. The jury listened to the audio tape, where he consistently referred to Aaron 13 as a little girl. And he admitted that if he had truly believed he was talking with a 20-year-old, a 20-year-old would have found perverse his story about this 12-year-old stepdaughter. He also tells agents on the audio, I made a mistake. I'm glad you caught me. Given the government's evidence in the form of Mr. Monsivais' chat history with Aaron, which is extensive and explicit, and the fact that nothing came of the chat with Jane Doe or whatever we're calling the unknown minor, how is Mr. Monsivais' short conversation with Jane Doe, a minor and not the undercover agent, not more prejudicial than probative? Isn't it really being shown to say real children are getting hurt by this fellow? It's not being shown for that purpose, Your Honor. It's being shown to show a pattern, and these cases are a progression. In most of the cases, the defendant doesn't outright say, would you like to have sex, initially. It starts off with a progression of conversation. Some of those cases take, in the defendant's brief, some of those cases have conversations that are 14 months long and 8 months long, where it progresses into that. Can you help me with the 403 balancing? That's exactly what the question is about, the balancing. The 403 balancing, prejudicial rather than probative. It is probative because it's probative to his intent, which is at issue when he pleaded not guilty. But don't you think it's really prejudicial? I do not think it's prejudicial. I do not, because of the reasons that I gave that it is, again, relevant to the pattern. It is not prejudicial because the jury knew that it didn't have any sexual overtures. It was just relevant to show pattern and plan, and frankly, as we note in our brief, all government evidence, to some extent, is prejudicial. Right. Yeah, I thought for sure you'd say, yeah, it's prejudicial. I didn't know you'd say, no, it's not. But you'd say, well, but it's probative, so it's okay. I didn't say it was okay. That's what you do if you're trying to win the 403 balancing. Well, the 404B balancing, is my understanding, is that you start with what it's relevant to, and we're arguing it's relevant to intent, it's relevant to show pattern and plan. Plan is to do this crime. Isn't he right on that? It was a pattern of grooming, Your Honor, so maybe not plans. Plan is not the right word. Pattern of grooming, Your Honor. Pattern of grooming is the correct. One thing I would like to point out with respect to the enlarged picture that was shown, this was not a surprise. It's the exact thumbnail photo of Jane Doe on Montsevai's cell phone. Just to give the Court a little background on that, the day before trial, defense counsel informed the Court and the prosecutor that he had searched Facebook and actually found the real Jane Doe and was going to introduce the evidence at trial. That's at record pages 12 through 13, 687, 686, 720, 724, and 725. So that night, the agent searched Facebook, and lo and behold, sees the exact same profile picture as the one that was on Montsevai's thumbprint, the thumbnail picture that was on Montsevai's phone. It's the exact same picture. And we know that he saw that profile, as I stated in Government Exhibit 8 in the chat log, where he refers to her age. And the reason the government showed that picture to the jury is because it's a clearer and sharper image. Even defense counsel at record 233 noted that when you try to enlarge these thumbnail photographs, the pixels distort the image. And again, we did not show it as just propensity to talk to children, but we showed it as a pattern of grooming, a script, and a lure. And Jane Doe was clearly a child. If there's no further questions, I respectfully request that the Court affirm the judgment. You don't want to talk about the guideline, plain error? Well, Your Honor, as you mentioned, if the appellant does not raise it initially, then— Well, you can certainly talk about it. Usually? Okay, if you would like me to. I don't care whether you do or not. Well— I'd like for you to, since it's been brought up now. Okay. We recognize that Judge Kazin did misapply the guidelines in not considering the effect of the general attempt 2X1.1. But even if Judge Kazin had considered it, under plain error review, Monsivais completed all the acts he believed necessary for successful completion of the substantive offense, and he is not entitled to a reduction for attempt. But then doesn't it conflate attempt and the actual act? It conflates the two. No. We have to charge attempt because we don't really have an actual minor. But the guideline states that you have to look at the substantive offense, and the substantive offense in this case is the intent to persuade someone under the age of 18 to engage in a sexual act. And so here we look to see whether he completed all the acts he believed necessary. And the first one is the intent to persuade. And this Court has recognized in Note 6 of both Broussard and Barlow that there's a consensus among the circuits that Congress intended to criminalize the persuasion and the attempt to persuade itself, not the criminal—not the act of sexual activity itself, to prevent this exact type of scenario that is happening in this case. And the intent to persuade Aaron 13 is pervasive throughout this case. He initiated the overtly sexual images. That's the round case—the messages, excuse me. He has a pattern of grooming. That's the Howard case. He tells the story of the 12-year-old stepdaughter. He also tells her that he's still friends with his stepdaughter. He compliments her. He gives her affectionate emoticons. He promises her flowers. He tells her that she will be safe with him. And he took acts that were necessary to make the offense complete. And those acts were—he made arrangements, and he actually traveled to the meeting place so that this offense could happen. If we don't agree with you, is Prong 3 satisfied? No, Your Honor. It's not satisfied because had the Court actually considered 2X1.1, the sentence could be potentially even higher than if the Court had just considered 2G1.3. And the reason is the Court would start with 2G1.3, the guideline for the substantive offense, as it did. And if it had referred to 2X1.2—excuse me, 2X1.1, the attempt guideline, then the Court could have actually added two levels if the intended offense conduct involved committing a sexual act. That's in the footnote, our last footnote of our brief. So it would not have affected his substantial rights. If there's no further questions— So you do your plain error, your fourth prong in one sentence? Yes, Your Honor. Okay. If there's no further questions, I respectfully request affirmance. Thank you. Thank you. Mr. Howell, you have about two minutes left. Thank you, Judge Dennis. I'm all nervous here. Sorry about that. Just a couple quick responses to the government's point. As to intent, Beecham requires the same intent in the extrinsic offense as the charged offense. That is black-letter Fifth Circuit law. So we cannot infer intent out of a pattern of activity. In fact, pattern activity is not a relevant purpose under 404B. It is literally propensity. In United States v. Goodwin, this court explained very clearly that the difference between plan and propensity is that plan goes towards the overarching goal to commit the charged offense. It is never okay to use it to show that this is the sort of crime that the defendant does, meaning repeated similar conduct. It's just simply not relevant. And as to the balancing, the government overreaches there in explaining that balancing was satisfied by balancing different extrinsic evidence. Balancing is required to be done for each individual piece of evidence's probity against its prejudice. And in this case, the fact that those other pieces of evidence were kept out tells us nothing as to whether or not it was too prejudicial to let in the Jane Doe evidence. With respect to the response argument, this was not a response, a necessitated response. The Jane Doe evidence was a calculated trial strategy by the government. It was the last piece of evidence the government put in. The surprise picture was a surprise. It was not gotten until the day after jury selection, taken in the night in between trial, and it wasn't even disclosed to the defense or the district court until it was put on the ELMO. And the inculpatory aspects of the conversation in this case were not enough to demonstrate that it's overwhelming evidence. This is basically a credibility determination. The government is the party that introduced Mr. Monsivais' statements denying belief, so there was a credibility choice here. And that is, sure, it's sufficient, but that doesn't necessarily make the evidence overwhelming. And lastly, extrinsic evidence has to be probative in a way not linked to propensity. Here it was. The government admits that the predisposition was problematic, but that's the least inflammatory argument the government made. In fact, the government even suggested Mr. Monsivais was a predator and that he had, quote, a script he has basically to entice children that he had used, quote, who knows how many times. Your Honors, for these reasons, we think this court should grant a new trial to Mr. Monsivais, and I'll submit the case. Thank you. Thank you, sir.